## STATE *vs.* EUGENE E. PAXSON.

1. ASSAULT AND BATTERY—CRIMINAL RESPONSIBILITY—"ASSAULT."

An "assault" is an attempt or offer by violence to do hurt or injury to another, with the present ability to carry the intention into effect.

2. ASSAULT AND BATTERY—CRIMINAL RESPONSIBILITY—ELEMENTS OF OFFENSE—INTENT.

The intent with which an assault is made need not be a specific purpose to do a particular injury, wantonness or mere recklessness being sufficient, but there must be a present ability to carry the unlawful intent into effect,

such, at least, as to reasonably put the person against whom it is directed in fear of injury unless he retreat.

3. ASSAULT AND BATTERY—CRIMINAL RESPONSIBILITY—ELEMENTS OF OFFENSE.

It is not essential that the person charged with an assault should be within striking distance of the person assaulted, and there need be no actual contact of the person if the physical force or violence put in motion is such as to create a reasonable apprehension of physical injury.

4. ASSAULT AND BATTERY—CRIMINAL RESPONSIBILITY—JUSTIFICATION.

Mere entry or trespass on the lands or private way of another, however wrongful, will not justify or excuse resort to a deadly weapon, or to any more force than is reasonably necessary to drive the intruder off.

(*November* 21, 1916.)

JUDGES BOYCE and RICE sitting.

*Armon D. Chaytor, Jr.*, Deputy Attorney General, for the State.

*Levin Irving Handy* for defendant.

Court of General Sessions, New Castle County, November Term, 1916.

INDICTMENT FOR ASSAULT AND BATTERY, No. 23, September Term, 1916.

Eugene E. Paxson was indicted for assault and battery. Verdict of guilty.

The state introduced evidence to show that on the evening of May 22, 1916, the prosecuting witness, Edgar P. Young, in company with four ladies, proceeded in Young's automobile, from their home in Chesapeake City, Maryland, to Middletown, Delaware; that after purchasing candy and ice cream in Middletown, they proceeded on the return trip to Chesapeake City, and that, somewhere between 9:30 and 9:45 o'clock they approached the residence of the defendant, and when on the public road, opposite the open entrance to the lane of the defendant, they decided to turn into it, and did turn into the defendant's lane just far enough to clear the rear wheels of the automobile from the public road; that they then stopped the automobile under a tree which grew beside the lane and which threw its branches out over the lane,

turned off the head lights, leaving the side lights and rear light burning; that they did this because they thought they could sit in the motionless automobile and enjoy the candy and ice cream better than when the automobile was in motion; that they were there about five or ten minutes when they heard a voice up the lane say: "What is the trouble down there?" to which the prosecuting witness replied, "There is no trouble," and immediately put his hand on the starter and started to back into the road; that at about that time two barrels of a shot gun were fired directly at them; that the impact of the shot upon some part of the automobile could be distinctly heard, and that when the automobile was entirely off the defendant's land and out on the public road, the second shot was fired; that the flash of the gun could be distinctly seen both times, but that they could not see who fired the gun.

The defendant introduced evidence to show that no shots were fired at an automobile at the time testified to by the State's witnesses, but that sometime between 11 and 11:30, he, the defendant, was awakened in his bed room by his mother complaining of an automobile headlight shining in her bed room window, that after going to his mother's room and seeing the light, he went downstairs without dressing and stood for awhile upon his front porch, that he heard voices, which to him sounded like male voices, at a point which to him seemed about thirty feet from where the automobile was standing and in the direction of his chicken house; that the distance from the porch down to the entrance of the lane from the public road, was one hundred and twenty-nine yards; that the automobile left the tracks showing where it had stood, and that the distance, as measured from the front porch to where the automobile stood, was eighty-four yards; that upon hearing the voices he went into the house and got his gun; that he then returned to the porch and called out, "Are you in trouble?" and someone replied, "No," that he then said, "What do you want in here?" and the next reply came back, "None of your damned business," and that he then shot at the machine; that thereupon the lights on the front of the machine went out and he heard a noise like the starting of an engine and

supposed they were backing out.   The defendant admitted that he also shot a second time but claimed that that shot was up in the air.

On addressing the jury at close of the testimony, the Deputy Attorney General asked for a verdict of guilty of assault only.

Boyce, J., charging the jury, in part:

[1]   An assault is an attempt, or offer, by violence, to do hurt or injury to another, with a present ability to carry the intention into effect.

[2]   The intent with which an assault is made need not be a specific purpose to do a particular injury, wantonness or mere recklessness being sufficient.   To constitute an assault there must be a present ability to carry the unlawful intent into effect, such, at least, as to reasonably put the person against which it is directed in fear of injury, unless he retreat.

[3]   It is not essential that the person charged with making the assault should be within striking distance of the person assaulted.   Indeed to constitute an assault there need be no actual contact of the person, if the physical force or violence put in motion is such as to create a reasonable apprehension of physical injury.

[4]   The jury having considered the case for sometime in their room, sent the following query to the court:

"The jury wish to know if a man is guilty of assault when he shoots at a trespasser at night after calling to him and receives no satisfactory answer?"

Being directed so to do, the jury returned to the court room, when the court instructed them that a mere entry or trespass upon the lands or private way of another, however wrongful it may be, will not justify or excuse resort to the use of a deadly weapon, or, indeed, the use of any more force than is reasonably necessary to drive the intruder off.   The means which one may employ in defense of his house, or against the felonious taking or destruction of his property need not be considered.

Verdict, guilty of assault.